UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO A. MARTINEZ FLORES,<br><br>        Petitioner,<br><br>    v.<br><br>POLLY KAISER, *et al.*,<br><br>        Respondents. | Case No.  1:26-cv-00582-KES-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Doc. 1)<br><br>**7-DAY OBJECTION PERIOD** |

Petitioner Roberto A Martinez Flores, a federal immigration detainee proceeding by counsel, initiated this action on January 14, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the Central District of California.  (Doc. 1).  Petitioner is in custody the of Immigration and Customs Enforcement ("ICE") at the California City Detention Facility, located in California City, California.  *Id.* ¶ 5.  Respondents are Polly Kaiser (ICE Field Office Director), Kristi Noem (Secretary of the Department of Homeland Security), the Department of Homeland Security, the Executive Office for Immigration Review, and Christopher Chestnut (Warden, California City Detention Facility) (hereinafter, "Respondents").  *See id.*  A magistrate judge sitting in the Central District of California transferred the action to this Court on January 21, 2026.  (Doc. 3).

At the Court's direction, Respondents filed a response to the petition on January 30, 2026. (Doc. 11).  Petitioner replied on February 2, 2026.  (Doc. 12).  For the reasons set forth herein, the

1

undersigned recommends that Petitioner's petition for writ of habeas corpus be granted.

I.    **Relevant Background**

Petitioner is a citizen of El Salvador who unlawfully entered the United States on or about April 20, 2021.  *See* (Doc. 1 ¶¶ 5, 19; Doc. 1-2 at 4).  Petitioner commenced an action for asylum shortly thereafter and proceedings in immigration court remain pending.  (Doc. 1 ¶ 6; Doc. 1-2 at 4-5).  Petitioner was released from custody on his own recognizance following his initial encounter with immigration authorities and, since that time, has been subject to monitoring by and check-ins with ICE following his enrollment in ICE's Intensive Supervision Appearance Program ("ISAP").  (Doc. 1 ¶ 6; Doc. 1-2 at 6-7; Doc. 11-1 at 3).  During his most recent check-in with ICE on December 9, 2025, Petitioner was re-arrested, informed by ICE that he had missed an earlier check-in (which Petitioner disputes), and placed in removal proceedings.  (Doc. 1 ¶ 6; Doc. 1-2 at 5-6).  Respondents assert Petitioner "violated the [ISAP] program by missing five check-ins."  (Doc. 11 at 1) (citing Doc. 11-1 at 3-4).

On December 18, 2025, Petitioner moved in the immigration court for a custody redetermination pursuant to 8 C.F.R. § 1236.  (Doc. 1-2 at 3-9).  On January 5, 2026, an immigration judge denied Petitioner's request for a change of custody status, finding the immigration court "lacks jurisdiction over the request" and citing as authority the BIA's decision in *Matter of Hurtado*, 29 I&N Dec. 216 (BIA 2025).  (Doc. 1-3 at 61).

In the petition, Petitioner asserts he is entitled to be released as a member of the "Bond Denial Class" (also correctly referred to elsewhere in the petition as the "Bond Eligible Class") certified in *Maldonado Bautista v. Santacruz*, Case No. 5:25-cv-01873-SSS-BFM (C.D. Cal.) ("*Maldonado Bautista*").  *See* (Doc. 1 ¶¶ 1, 5).  In that case, the district court certified a class of all noncitizens in the United States "without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination."  (*Maldonado Bautista,* Docs. 82, 93 at 51).  Petitioner asserts that Respondents are parties to *Maldonado Bautista* and therefore bound by the declaratory judgment issued in that case finding that class members are

2

entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a), and that by denying Petitioner a bond hearing, Respondents violate Petitioner's statutory rights under the INA and the judgment rendered in *Maldonado Bautista*. (Doc. 1 ¶¶ 26-30).

Petitioner asserts a single claim alleging a violation of the INA (8 U.S.C. § 1226(a)). In relief, Petitioner seeks a court order requiring his release, or "[a]lternatively," a court order directing "Respondents to release Petitioner unless they provide a bond hearing under 8 U.S.C. § 1226(a)." (Doc. 1 at 8-9)

## II.    Governing Authority

### A.    The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

### B.    Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225. Relevant here is the legal background presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503 (N.D. Cal. Sept 12, 2025), which the undersigned adopts herein:

#### 1.    Full Removal Proceedings and Discretionary Detention (§ 1226)

The "usual removal process" involves an evidentiary hearing before

3

an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

### 2.    Expedited Removal and Mandatory Detention (§ 1225)

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in

4

clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to

5

vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3.    The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785

6

(2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

## III.    Discussion

As set forth below, the undersigned finds that Respondents have violated Petitioner's statutory rights under the INA as his detention properly is governed by 8 U.S.C. § 1226(a).

### A.    Statutory Scheme: 8 U.S.C. § 1226(a) Applies

Petitioner contends that he remains in custody in violation of his right to a bond hearing before in immigration judge pursuant to 8 U.S.C. § 1226(a).  Specifically, the immigration judge who rejected Petitioner's request for a custody redetermination cited as authority the BIA's decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), that a noncitizen charged with having entered the United States without inspection (like Petitioner) is ineligible for a bond redetermination hearing before an immigration judge as such a noncitizen is an "applicant for admission" and falls within the mandatory detention scheme under 8 U.S.C. § 1225(b)(2)(A).

Section 1225 governs the detention of noncitizens "seeking admission" into the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018); *see id.* at 282 ("§§ 1225(b) … do[e]s

7

not give detained aliens the right to periodic bond hearings during the course of their detention."). In contrast, § 1226 sets forth a "default rule" for noncitizens already present within the United States. *Id.* at 288. Relevant here, § 1225(b)(1) applies to aliens "arriving in the United States" or aliens who have "not been admitted or paroled into the United States" and have not "affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the [two]-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)1)(A)(i), (iii)(II).

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). For § 1225(b)(2)(A) to apply, an examining immigration officer must determine that the individual is (1) an "applicant for admission," (2) "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted." *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1113 (E.D. Cal. 2025) (citing *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025)).

Here, at the time of his most recent re-arrest in December 2025, Petitioner already was present in the United States following his initial arrest and detention by ICE in 2021 and then released under ICE's supervision. Based on these facts, the plain language of § 1225(b) demonstrates that it is inapplicable to Petitioner because he is not "arriving" in the United States but rather arrived here more than three years prior to his recent re-arrest by ICE in December 2025. Further, Respondents have not shown that an examining immigration officer made any determination under § 1225(b)(2)(A) that Petitioner is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." *See Lepe*, 801 F. Supp. 3d at 1113. Nor do Respondents argue that Petitioner properly is subject to mandatory detention under some other qualifying detention provision.

Under these circumstances, and having determined that the mandatory detention framework under § 1225(b) does not apply to Petitioner, the undersigned finds that § 1226(a) provides the proper framework for noncitizens already residing in the United States. *See, e.g.*, *Garcia v. Noem*,

803 F. Supp. 3d 1064, 1076-77 (S.D. Cal. 2025).  In *Garcia*, three petitioners entered the United States and resided in the country for some time before they were arrested and placed into immigration detention.  *Id.* at 1070.  These petitioners, like Petitioner here, were charged by ICE with inadmissibility as being present in the United States without being admitted or paroled.  *Id.* The *Garcia* court found that § 1225(b) did not apply because the petitioners were not "seeking admission" within the meaning of that statute and that the petitioners' detention therefore was governed by § 1226(a), including for discretionary detention and a bond determination hearing.  *Id.* at 1076-78; *see Martinez*, 792 F. Supp. 3d at 221 ("[S]ection 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'") (citing *Jennings*, 583 U.S. at 288-89).

Other courts likewise have found that the text of sections 1225 and 1226, coupled with application of commonly used canons of statutory interpretation, legislative history, and ICE's historical practices predating DHS's recent shift in policy, weigh in favor of finding that section 1226(a)'s discretionary framework governs the detention of noncitizens who, like Petitioner, are already in the country when encountered by immigration authorities.  *See Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025);  *Otero v. Robbins, et al.*, No. 1:25-cv-1790 CSK, 2025 WL 3704453, at *5 (E.D. Cal. Dec. 22, 2025) (collecting cases, adopting the reasoning of the *Lepe* court, and finding that "[t]his Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondents' interpretation of Sections 1225 and 1226"); *Morales-Flores v. Lyons*, No. 1:25-cv-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases and noting "Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful"); *J.Y.L.C. v. Bostock*, No. 3:25-cv-02083-AB, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (citing cases and noting that this conclusion is "consistent with the holdings of dozens of district courts across the country"); *Barco Mercado v. Francis*,-- F. Supp. 3d --, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (noting that this statutory interpretation "has been challenged in at least 362 cases in federal district courts," with the challengers having prevailed "either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty

different courts").

"Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk, the IJ will order his release." *Id.* (internal quotation and citations omitted).

During his detention, Petitioner requested custody redetermination as provided for under section 1226(a) that was denied by an immigration judge based on a finding that the immigration court "lacks jurisdiction." *See* (Doc. 1-3 at 61). Because, as discussed above, Petitioner's detention is governed under § 1226(a) and because he was denied a bond hearing for which he is entitled by statute, the undersigned finds that Petitioner has shown a violation of his rights under § 1226(a).

Respondents argue that Petitioner failed to comply with the conditions of his release. Specifically, Respondents assert that Petitioner violated the ISAP program by "missing five check-ins" with ICE. (Doc. 11 at 1). In support, Respondents proffer a law enforcement document dated the day of Petitioner's arrest by ICE (December 9, 2025) that purports to summarize a "missed biometric check-in" on November 14, 2024, and four "missed self report check in[s]" occurring between May and September 2025. (Doc. 11-1). Petitioner disputes these alleged infractions (*see* Doc. 12 at 3-4, citing exhibits at Docs. 1-2 & 1-3) and Respondents do not advance any arguments as to whether or how this information informs either ICE's authority to re-arrest and detain Petitioner or the immigration judge's refusal to consider Petitioner's request for a custody redetermination. The undersigned does not find Respondents' assertions regarding Petitioner's purported lack of compliance with any conditions of supervised release relevant to the issue of whether or not Petitioner is entitled to a custody redetermination under 8 U.S.C. § 1226(a).

Accordingly, the undersigned will recommend the Court grant Petitioner's petition on his claim for violation of § 1226(a) and recommend the Court order Respondents to provide Petitioner with a bond hearing as set forth below.

///

**B.** *Maldonado Bautista* **Action**

Petitioner cites in his petition to *Maldonado Bautista* and alleges that he is a member of the "Bond Eligible Class" that is entitled to consideration for release on bond under § 1226(a).  As summarized above, the *Maldonado Bautista* court certified a class of noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.  (*Maldonado Bautista,* Doc. 93 at 51; Doc. 94).  Petitioner asserts that Respondents are parties to *Maldonado Bautista* and therefore bound by the declaratory judgment rendered in that case.  (Doc. 1 ¶¶ 8, 29).  Petitioner further alleges that by denying Petitioner a bond hearing under § 1226(a), Respondents violate their statutory rights under the INA and the judgment rendered in *Maldonado Bautista*.

District courts within the Ninth Circuit have diverged in addressing claims similar to Petitioner's implicating the *Maldonado Bautista* class.  A district judge in this Court concluded that a petitioner who alleges membership in the *Maldonado Bautista* certified class may not seek relief in this district and, instead, must seek to enforce the out-of-district judgment where it was entered (the Central District of California).  *See Brave & Free Santa Cruz v. Aragon*, No. 2:24-cv-02312-DAD-JDP, 2025 WL 2324172, at *5 (E.D. Cal. Aug. 12, 2025) (collecting cases and noting "that the undersigned, a district judge in the U.S. District Court for the Eastern District of California, lacks the authority to 'enforce' an injunction issued in the U.S. District Court for the Northern District of California") (citing, *inter alia*, *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)).  Another district judge of this Court concluded that the *Maldonado Bautista* judgment was not binding in this district for different reasons.  *Falcon v. Wofford*, No. 1:26-cv-00181-WBS-EFB, 2026 WL 171927, at *2-3 (E.D. Cal. Jan. 22, 2026).  In contrast, another magistrate judge of this Court concluded that a petitioner-member of the *Maldonado Bautista* may seek to enforce in this district the judgment entered in that action.  *J.S. v. Wofford*, No. 1:25-cv-02016 DC SCR (HC), 2026 WL 125258, at *7 (E.D. Cal. Jan. 16, 2026) ("Petitioner is a member of the *Maldonado Bautista* "Bond Eligible" class and thus entitled to class-wide, declaratory relief regarding the illegality of the DHS

11

Interim Guidance."). However, the presiding district judge did not adopt this portion of the findings and recommendations, but rather granted the petition on the alternative ground that the petitioner's rights under the INA had been violated by the respondents' detention of him without a bond hearing. *See J.S.*, 2026 WL 297304, at *1 (E.D. Cal. Feb. 4, 2026).

The undersigned need not resolve the issue of the enforceability of the *Maldonado Baustista* judgment here given that Petitioner is entitled to the relief he seeks in light of Respondents' violation of his statutory rights under section 1226(a). *See id.; H.F. v. Albarran*, No. 1:25-cv-01795-TLN-EFB, 2025 WL 3691081, at *2 n.5 (E.D. Cal. Dec. 19, 2025) ("Because the Court finds Petitioner's statutory and due process rights were likely violated, it need not address the parties' arguments as to whether Petitioner is a member of the class certified in [*Maldonado Bautista*]").

**C.     Relief**

The undersigned considers whether Petitioner is entitled to a pre-deprivation or post-deprivation bond hearing, and further, addresses what standards should apply at that hearing.

First, the undersigned concludes that Petitioner is entitled only to a post-deprivation bond hearing. As summarized above, the parties dispute the nature and severity of Petitioner's alleged violation of his terms of supervised release – specifically, a missed biometric check-in in November 2025 and four missed self-report check-ins occurring between May and September 2025. (Doc. 11-1). The undersigned observes that Respondents' records do not reflect that Petitioner "missed" self-report check-ins; rather, they reflect that Petitioner checked-in on the same day he was prompted to report but several hours after the "assigned check-in window." Moreover, there is no information that Petitioner violated his supervision terms in either October 2025 or November 2025. Further, the undersigned notes that Petitioner nevertheless was arrested by ICE on December 9, 2025, only after he complied with directions to report to the ICE office.

Though Petitioner offers explanations for the alleged violations, ICE's reliance upon those violations was "not obviously pretex[t]ual." *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight.") (citing cases); accord

*O.A.C.C. v. Wofford*, No. 1:25-cv-01652-DAD-CSK (HC), 2025 WL 3485221, at *4-5 (E.D. Cal. Dec. 4, 2025).

Second, Petitioner was released by ICE on his own recognizance following his initial encounter and arrest in April 2021 and later enrolled in ISAP and submitted to ICE monitoring and frequent and recurring check-ins for approximately three-and-a-half years prior to his re-detention in December 2025. In releasing Petitioner, immigration officials necessarily determined that he did not present a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Nevertheless, Petitioner has never been afforded a bond hearing before an immigration judge, despite his recent request for such a custody redetermination.

Under these circumstances, even in the light of disputed issues of fact concerning the nature and severity of Petitioner's alleged violation of terms of his supervised release, the undersigned will recommend the Court find that the government should bear the burden of establishing at the bond hearing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *E.g., Singh v. Andrews*, No. 1:25-cv-01543-DCJ-SCR, 2025 WL 3248059, at *6 (E.D. Cal. Nov. 19, 2025) (requiring government to carry burden by clear and convincing evidence, notwithstanding disputed issues of facts involving the petitioner's alleged violation of release conditions); *M.V.I. v. Andrews*, No. 1:25-cv-01440-JLT-SKO, 2025 WL 3154403, at *13-14 (E.D. Cal. Nov. 112, 2025) (same). "Doing so is logical" because "the immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *M.R.R. v. Chestnut*, No. 1:25-cv-01517-JLT-SKO, 2025 WL 3265446, at *14 (E.D. Cal. Nov. 24, 2025) (relying on *Pinchi v. Noem*, 792 F. Supp. 3d 1025, at 1034, 1038 (N.D. Cal. 2025)); accord *Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *8-9 (E.D. Cal. Nov. 22,

2025).

## IV.  <u>Conclusion and Recommendation</u>

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Petitioner's petition for writ of habeas corpus (Doc. 1) be GRANTED.

2.  Respondents be ORDERED to provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a) within seven (7) days of the date of this Order, at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified.

3.  If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Respondents be ORDERED to release Petitioner from custody immediately and forbear from re-detaining Petitioner unless the government provides notice to Petitioner a minimum of seven (7) days in advance and holds a bond hearing consistent with this order; and

4.  The Clerk of the Court be DIRECTED to enter judgment in favor for Petitioner and close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require.").  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown.  The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number.  Any pages filed in excess of the 15-page limitation may be

14

disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **February 20, 2026**

_____
UNITED STATES MAGISTRATE JUDGE